**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

DIANE STRZAKOWLSKI, for herself and
and all others similarly situated,

        Plaintiff,

        v.

GENERAL MOTORS CORPORATION,

        Defendant.
_____

:
:
:    Hon. Joseph H. Rodriguez
:
:
:    Civil Action No. 04-4740
:
:
:    **ORDER**
:
:
:

This matter comes before the Court on Defendant General Motors Corporation's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, the motion will be denied.

## I.  BACKGROUND

Plaintiff Diane Strzakowlski ("Plaintiff") brought this action on behalf of herself and all others similarly situated.  She filed the Complaint on August 18, 2004 in New Jersey Superior Court, Camden County.  On September 28, 2004, Defendant General Motors Corporation ("GM") removed the case from Superior Court to this District Court pursuant to 28 U.S.C. § 1441.

Plaintiff alleges that between 2000 and 2003, GM manufactured, marketed, and sold nationwide approximately four (4) million vehicles containing defective 3.8 liter V6

engines ("K Engine vehicles"),[1] including her 2002 Chevrolet Monte Carlo.  (Compl., ¶¶ 3; 7.)  The alleged defect pertains to a part called the manifold-plenum, which, in K Engine vehicles, is made from plastic.  (Compl., ¶¶ 21; 26.)  Because of the high temperatures associated with the engine's internal combustion, Plaintiff claims that this part easily deforms and causes engine coolant leakage.  (Compl., ¶¶ 22-24; 26.)  This can result in a host of problems including engine overheating and operational failure. (Compl., ¶¶ 22-24; Def. Exh. B.)

In July 2003, GM initiated a "Customer Satisfaction Program" ("CSP") to be implemented by its authorized service representatives.  (Def. Exh. B; Compl., ¶ 25.)  The CSP's ostensible purpose was to address the problems associated with K Engine vehicles' manifold-plenum.  In a letter to K Engine vehicle owners and lessees, GM stated:

> We have learned that your vehicle may develop an engine coolant leak at the upper intake manifold throttle body gasket, or at the lower intake to the upper intake gasket.  This condition may result in a low engine coolant level and higher engine temperatures.

(Def. Exh. C.)  The letter then indicated that owners and lessees should take their K Engine vehicles into their local GM dealerships for repair services any time through July 31, 2005.  (Id.)  It also offered to potentially compensate owners and lessees for repairs to the manifold-plenum that they independently undertook.  (Id.)

---

[1]These vehicles are hereinafter called "K Engine vehicles" because they are identifiable by the appearance of the letter "K" as the eighth digit of the vehicle identification number.

In September 2003, Plaintiff took her Chevrolet Monte Carlo to the dealership of purchase for repair pursuant to the CSP.[2]  (Compl., ¶ 28.)  Under the repair procedure outlined by GM, service technicians were to execute the repair by replacing three throttle body nuts and inserting coolant sealant pellets into the vehicle's radiator.  (Def. Exh. B; Compl., ¶ 26.)  However, this repair seemingly did not correct the manifold-plenum problem, at least as far as Plaintiff's vehicle was concerned.  (Compl., ¶ 31.)  In fact, Plaintiff experienced at least one incident of coolant leakage from her vehicle's intake manifold-plenum in June 2004.[3]  (Id.)

Plaintiff alleges that GM knew that its K Engine vehicles were critically defective even as they continued to manufacture and sell them to consumers.  (Compl., ¶ 45.)  Moreover, she claims that GM attempted to conceal this knowledge from the motoring public in order to protect its sales.  (Id.)  Further, Plaintiff alleges that even when it finally announced the problem in the July 2003 CSP notice letter, GM continued its attempted deception by deliberately crafting a repair procedure that would only mask visible signs of the defect rather than properly repair the underlying problem.  (Compl., ¶¶ 26; 27.)  The purpose of this alleged deception was to bide time until K Engine vehicles'

---

[2]It is uncertain whether Plaintiff experienced any manifestation of the alleged defect, such as coolant leakage, prior to when she took her vehicle in for service under the CSP.

[3]It is uncertain how many incidents of coolant leakage Plaintiff experienced following the September 2003 CSP repair.  Plaintiff's Complaint introduces her post-CSP leakage by stating that an incident occurred "[a]s recently as June 2004."  (Compl., ¶ 31.)  This wording implies that there were multiple incidents.  However, only the June 2004 incident was specifically alleged.

warranties expired, thereby transferring the cost[4] of ultimate repair to consumers. (Compl., ¶ 27.)

Based on these factual allegations, Count One of the Complaint asserts that GM breached its express warranty, which provides for free repair of any defects in materials or workmanship for a limited period.  (Compl., ¶¶ 33-39.)  Additionally, Count Two contends that GM's alleged deception and deliberately inadequate CSP repair procedure violated the New Jersey Consumer Fraud Act ("CFA" or "the Act"), N.J. Stat. Ann. 56:8-1 to 20.  (Compl., ¶¶ 40-51.)  Plaintiff prays for relief in the form of: 1) an order certifying the plaintiff Class and appointing Plaintiff and her counsel to represent the Class; 2) actual damages for injuries suffered by Plaintiff and the Class as to the breach of warranty claim; 3) injunctive relief in the form of an order directing GM to properly repair the defective manifold-plenum; 4) damages pursuant to the CFA claim, including actual damages, treble damages, and costs of suit, including attorneys' fees; 5) statutory pre-judgment interest; and 6) any other relief deemed appropriate by the Court.

On November 29, 2004, GM moved to dismiss the Complaint for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Several arguments in support of the motion are proffered.  First, GM claims that Plaintiff's express warranty claim cannot stand because she did not provide adequate notice of the facts she claims to

---

[4]Plaintiff claims that while GM's undertaken repair cost approximately $50 per vehicle, a proper repair would cost as much as $800 per vehicle because it would necessitate a complete redesign or remanufacturering of the manifold-plenum unit.  (See Compl., ¶ 32.)

-4-

constitute breach.  Second, GM argues that Plaintiff's CFA claim must fail because: 1)
she did not allege any action or behavior on the part of GM that could constitute unlawful
conduct in violation of the Act; and 2) she did not sufficiently allege that she suffered an
ascertainable loss that was caused by GM's conduct.  Third, GM asserts that even if the
Court were to hold that Plaintiff had stated a claim on behalf of herself, her Complaint
fails to state a claim on behalf of the proposed Class.[5]  Therefore, it requests, at the very
least, that the Court dismiss the Class allegations.  This Court disagrees with GM's
assertions and therefore will deny its motion.

## II.  DISCUSSION

### A.  Standard on Motion to Dismiss

When considering a Rule 12(b)(6) motion to dismiss a complaint, a court must
accept all well-pleaded allegations in the complaint as true and view them in the light
most favorable to the plaintiff.  Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991);
Rogin v. Bensalem Twp., 616 F.2d 680, 685 (3d Cir. 1980).  A court may not dismiss the
complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle him to relief."  Conley v.

---

[5]Plaintiff's proposed class is defined as follows:

> All persons in the State of New Jersey who are current owners
> or lessees of a model year 2000, 2001, and 2003 Buick Park
> Avenue, Buick Regal, Chevrolet Impala, Chevrolet Monte
> Carlo, Pontiac Bonneville, Pontiac Grand Prix that contains a
> 3.8 liter V6 engine.

(Compl., ¶ 12.)

Gibson, 355 U.S. 41, 45-46 (1957) (citations omitted); see also D.P. Enters., Inc. v. Bucks

County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It is well settled that a pleading is sufficient if it contains "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). Under the liberal federal pleading rules, a complaint need not spell out the theory

of liability under which the plaintiff hopes to recover. See Evans Prods. Co. v. West Am.

Ins. Co., 736 F.2d 920, 923 (3d Cir. 1984). It is not necessary to plead evidence, and it is

not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf

Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of

Civil Procedure do not require a claimant to set forth an intricately detailed description of

the asserted basis for relief, they do require that the pleadings 'give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests.'" Baldwin

County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quoting Conley, 355

U.S. at 47).

Finally, a court reviewing a Rule 12(b)(6) motion must only consider the facts

alleged in the pleadings, the documents attached thereto as exhibits, and matters of

judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.,

181 F.3d 410, 426 (3d Cir. 1999); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d

1250, 1261 (3d Cir. 1994).

**B.  Failure to State a Claim For Breach of Express Warranty**

GM contends that Plaintiff fails to state a claim as to the breach of warranty issue because she did not provide GM with sufficient notice of the alleged breach.

New Jersey Statutes § 12A:2-607(3)(a) contains the Uniform Commercial Code's ("UCC") notice requirement for an express warranty claim.  It provides:

> Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

N.J. Stat. Ann. § 12A:2-607(3)(a).

This Court has previously predicted that the New Jersey Supreme Court would not require notice under section 2-607(3)(a) in a case against a remote manufacturer who was not the immediate seller of a defective product.[6]  Cipollone v. Liggett Group, Inc., 683 F. Supp. 1487, 1498 (D.N.J.), *rev'd on other grounds*, 893 F.2d 541 (3d Cir. 1990), *rev'd in part on other grounds and aff'd in part on other grounds*, 505 U.S. 504 (1992).  Further, even if notice was required under section 2-607(3)(a), this Court concluded that New Jersey would require a buyer to give notice only to his immediate seller.  Id.

---

[6]The Cipollone court came to this conclusion in light of the New Jersey Supreme Court's ruling in Santor v. A&M Karagheusian, Inc., 207 A.2d 305 (N.J. 1965).  In that case, the state supreme court held that the Uniform Sale of Goods law, which was the predecessor of the UCC, did not require notice of defective merchandise in an action against a manufacturer who was not the immediate seller of the product.  Id. at 313.  Additionally, the case permitted an action for pure economic loss to proceed under a strict liability in tort theory.  Id. at 311-12.  While the strict liability discussion in Santor was subsequently overruled, see Spring Motors Distributors, Inc. v. Ford Motor Co., 489 A.2d 660 (N.J. 1985); Alloway v. General Marine Industries, L.P., 695 A.2d 264 (1997), no case has suggested that Santor's treatment of notice to a remote manufacturer was incorrect.

Additionally, several cases have held that even if section 2-607(3)(a) requires notice to a remote manufacturer, such a requirement could be satisfied by the filing of a complaint.  See id.; see also Bednarski v. Hideout Homes & Realty, Inc., 709 F. Supp. 90, 93 (M.D. Pa. 1988) (permitting plaintiff's complaint to serve as notice under section 6-207(3)(a) in a breach of express warranty case for personal injury); Solarz v. Daimler Chrysler Corp., 47 U.C.C. Rep. Serv. 2d 969, 981-82 (Ct. of Comm. Pleas 2002) (extending Bednarski to permit notice under section 2-607(3)(a) by filing a complaint in an express warranty case for economic loss).  As for timing, it is a question for the factfinder whether the filing of the complaint in a given case constitutes a reasonable time for notice in light the circumstances of that case.  Cipollone, 683 F. Supp. at 1498.

Here, there was no pre-suit notice given to GM or its authorized dealer.[7]  However, this does not mean that GM's motion to dismiss should be granted because, under Cipollone, no notice must be given to a manufacturer who is not the immediate seller in an express warranty case.  Further, even if notice to GM is necessary under section 2-607(3)(a), the filing of Plaintiff's Complaint satisfied this requirement.  As indicated in

_____

[7]Plaintiff contends that she provided notice to the local dealer in September 2003 when she had her vehicle serviced pursuant to the CSP.  In support of her argument, Plaintiff cites to Ventura v. Ford, 433 A.2d 801, 811 (N.J. Super. Ct. App. Div. 1980), in which the Appellate Division waived notice as to a remote manufacturer where the plaintiff brought a defective vehicle to the manufacturer's dealer for "numerous" failed repair attempts.  While this seemingly permits a plaintiff to give notice by repeatedly bringing a defective product to the immediate seller for service, it cannot be read to waive notice to the remote manufacturer when the buyer has sought only one repair from the immediate seller.  On the one hand, where multiple repair attempts end in failure, an immediate seller could reasonably draw the conclusion that this constitutes a breach of warranty.  However, where there has been just one attempt at repair, and no further contact between the buyer and the immediate seller, there is nothing that would reasonably indicate to the immediate seller that the buyer considers the transaction to have resulted in breach.

_Cipollone_, whether this notice-by-suit was provided within a reasonable time is a question for the fact finder.  Therefore, the timing question is beyond the scope of a motion to dismiss for failure to state a claim.

Not surprisingly, GM argues that _Cipollone_ is inapposite in the instant matter.  Specifically, it contends that the personal injury nature of the action in _Cipollone_ limits that case's persuasive value in this suit, which is predicated only on Plaintiff's economic loss.  This argument lacks merit, however, because nothing in _Cipollone_ indicated that its holding was conditioned on the personal injury nature of case.[8]

Nonetheless, GM asserts that permitting notice-by-suit would undermine the purpose of the UCC's notice requirement by disallowing the seller an opportunity to cure an alleged breach without the necessity for litigation.  This characterization of section 2-607(3)(a)'s purpose ignores Comment 4 of that section, which provides in part:

> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched.  There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer . . . .  Nor is there reason for

---

[8]A similar argument was made by defendant-manufacturer in _Solarz v. Daimler Chrysler Corp._, 47 U.C.C. Rep. Serv. 2d 969 (Ct. of Comm. Pleas 2002).  In _Solarz_, the court permitted plaintiff's complaint to serve as notice in an express warranty case for pure economic loss.  The court relied heavily on _Bednarski v. Hideout Homes & Realty, Inc._, 709 F. Supp. 90 (M.D. Pa. 1988), in which the district court held that notice was provided by suit in a personal injury case.  Defendant-manufacturer in _Solarz_ thus argued that _Bednarski_ was distinguishable because it dealt with personal injury rather than economic loss.  The _Solarz_ court responded, however, by noting that "[n]owhere in the _Bednarski_ opinion does the court expressly carve out an exception to the notice requirement for 'consumer buyers who suffer personal injury.'"  _Solarz_, 47 U.C.C. Rep. Serv. 2d at 981.

> requiring the notification to be a claim for damages or of any
> threatened litigation or other resort to a remedy. *The
> notification which saves the buyer's rights under this Article
> need only be such as informs the seller that the transaction is
> claimed to involve a breach, and thus opens the way for
> normal settlement through negotiation.*

Uniform Commercial Code § 2-607, Comment 4 (emphasis added).  Thus, Comment 4

indicates that the purpose of the notice requirement is simply to spearhead settlement

through negotiation.  This, however, does not necessarily mean that negotiation and

simultaneous litigation are mutually exclusive.  Rather, common pre-trial practices

suggest that the opposite is true.  For these reasons, GM's motion to dismiss for failure to

state a claim as to the breach of warranty issue is denied.

### C.  Failure to State a Claim Under the Consumer Fraud Act

The New Jersey Consumer Fraud Act ("CFA" or "the Act") provides that:

> The act, use or employment by any person of any
> unconscionable commercial practice, deception, fraud, false
> pretense, false promise, misrepresentation, or the knowing,
> concealment, suppression, or omission of any material fact
> with intent that others rely upon such concealment,
> suppression or omission, in connection with the sale or
> advertisement of any merchandise . . . , or with the subsequent
> performance of such person as aforesaid, whether or not any
> person has in fact been misled, deceived or damaged thereby,
> is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2.  In order to state a claim under the CFA, a private plaintiff must

allege each of three elements: 1) unlawful conduct by the defendant; 2) an ascertainable

loss on the part of the plaintiff; and 3) a causal relationship between the defendant's

unlawful conduct and the plaintiff's ascertainable loss.  <u>Dabush v. Mercedes Benz USA,</u>

LLC, 874 A.2d 1110, 1115 (N.J. Super. Ct. App. Div. 2005).  Here, GM raises two grounds in support of its motion to dismiss for failure to state a claim under the CFA. First, it contends that Plaintiff did not properly allege unlawful conduct by GM.  Second, it argues that even if Plaintiff properly alleged unlawful conduct, she failed to allege facts sufficient to establish causation of an ascertainable loss.  For the reasons discussed below, GM's arguments are rejected and its motion to dismiss Plaintiff's CFA claim is denied.

### 1.  Allegation of Unlawful Conduct

GM contends that Plaintiff has failed to allege that GM engaged in conduct violative of the CFA.  It makes three specific assertions.  First, it claims that Plaintiff has alleged no aggravating factors required to transform the alleged breach of warranty into a consumer fraud claim.  Second, it argues, without extensive development, that the Complaint was not pleaded with the specificity required by Fed. R. Civ. P. 9(b).  Third, GM claims that Plaintiff's consumer fraud theory is flatly contradicted by the existence of the CSP.  These arguments are not persuasive.

### a.  Aggravating Factors

GM first argues that Plaintiff has alleged no aggravating factors that would transform her breach of warranty claim into a consumer fraud claim.  The New Jersey Supreme Court has stated that unconscionability in the context of the CFA is "an amorphous concept obviously designed to establish a broad business ethic."  Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994) (quoting Kugler v. Romain, 279 A.2d 640, 651 (N.J. 1971)).  Further, the standard of conduct that the term "unconscionable"

implies is lack of "good faith, honesty in fact and observance of fair dealing."  Id.

(quoting Kugler, 279 A.2d at 652).  Nonetheless, "a breach of warranty . . . is not per se

unfair or unconscionable and a breach of warranty alone does not violate a consumer

protection statute."  Id. (quoting D'Ercole Sales, Inc. v. Fruehauf Corp., 501 A.2d 990,

998 (N.J. Super. Ct. App. Div. 1985)).  Rather, in order to make out a claim under the

CFA, a plaintiff must allege the presence of "substantial aggravating circumstances . . . in

addition to the breach."  Id. (citing DiNicola v. Watchung Furniture's Country Manor, 556

A.2d 367 (N.J. Super. Ct. App. Div. 1989)).

Determination of whether there has been sufficient aggravating circumstances is

made on a case-by-case basis.  See Kugler, 279 A.2d at 651.  However, the concealment

of known defects in a product and false assurances of repair have been held to state a

claim under the CFA.  See Perth Amboy Iron Works, Inc. v. American Home Assur. Co.,

543 A.2d 1020, 1025-26 (N.J. Super. Ct. App. Div. 1988) (holding that a manufacturer of

a yacht's engines could be held liable to the yacht buyer under the CFA for allegedly

concealing known safety or significant operational problems with the engines or for later

falsely assuring the buyer that the engines were properly repaired); compare id. with

DiNicola, 556 A.2d at 368 (concluding that the CFA did not apply in a breach of warranty

case in which defendant-furniture store did not attempt to conceal the defects in furniture

it sold to the plaintiff).

Here, Plaintiff has sufficiently alleged the presence of aggravating circumstances

necessary to make out a claim under the CFA.  Plaintiff's Complaint alleges that GM

marketed K Engine vehicles despite the existence of significant known defects in the

engine design.  (Compl., ¶ 45.)  Moreover, the Complaint contends that GM knowingly

concealed information about this defect from consumers with the intent that they would

rely on the concealment and purchase the defective vehicles.  (Id.)  Likewise, Plaintiff

claims that GM used the repair procedure initiated under the CSP in order to further

mislead consumers by hiding detectable manifestations of the defect until after the

warranty periods on the K Engine vehicles had expired thereby transferring the cost of

ultimately repairing the vehicles directly to consumers.  (Compl., ¶ 27.)

### b.  Pleading Fraud With Particularity

GM argues that Plaintiff's claim of fraud is not plead in accordance with Fed. R.

Civ. P. 9(b).  Rule 9(b) provides that when pleading a cause of action for fraud, "the

circumstances constituting fraud . . . shall be stated with particularity."  A plaintiff need

not, however, plead the "date, place or time" of the fraud, as long as they use an

"alternative means of injecting precision and some measure of substantiation into their

allegations of fraud."  Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 385 (D.N.J.

1999) (quoting Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir.

1998), *abrogation on other grounds recognized*, Forbes v. Eagleson, 228 F.3d 471 (3d

Cir. 2000)).  Further, although it requires heightened specificity, courts should apply Rule

9(b) with flexibility and "should not require plaintiffs to plead issues that may have been

concealed by the defendant[]."  Id. (quoting Rolo, 155 F.3d at 658).  Ultimately, pleadings

of fraud are sufficient when they put the defendant on notice of the precise misconduct

with which it is charged.  Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,

742 F.2d 786, 791 (3d Cir. 1984).

Here, Plaintiff's Complaint is sufficiently particular to satisfy Rule 9(b)'s

requirements.  It details very clearly the nature of Plaintiff's fraud claim, including the

specific conduct and omissions alleged to constitute fraud.  Further, it specifies the

general dates of the alleged fraud insomuch as it provides the years during which GM

sold defective K Engine vehicles and the month and year during which GM initiated the

CSP.  (See Compl., ¶¶ 3; 25.)  Thus, GM has been put on notice of the precise misconduct

alleged against it and can respond accordingly.

### c.  Contradiction of Plaintiff's Fraud Theory

GM also argues that "[P]laintiff's theory makes no sense and is contradicted by her

allegation of the Customer Satisfaction Program itself."  (Def. Br. at 15.)  In essence, GM

contends that the existence of the CSP precludes the possibility that it attempted to

conceal information pertaining to the defective vehicles from the public.  This, however,

speaks to a factual issue, namely whether there was or was not concealment of the

allegedly defective condition of K Engine vehicles.  As such, it cannot be resolved on the

pleadings during a motion to dismiss for failure to state a claim.  Cf. In re Adams Golf,

Inc. Securities Litigation, 381 F.3d 267, 274 (3d Cir. 2004) (stating that materiality in a

securities case is ordinarily an issue left to the factfinder and is, therefore, not typically a

matter for dismissal under Rule 12(b)(6).  For these reasons, Plaintiff has properly

alleged the unlawful conduct element required by the CFA.

<u>2.  Allegation of Causation of an Ascertainable Loss</u>

GM also contends that even if Plaintiff properly alleged unlawful conduct, she has failed to allege facts sufficient to establish that such conduct caused her to suffer an ascertainable loss.  This Court disagrees.

In order to state a claim under the CFA, a plaintiff must allege that the defendant's unlawful conduct caused her to suffer an ascertainable loss.  <u>Dabush v. Mercedes Benz USA, LLC</u>, 874 A.2d 1110, 1115 (N.J. Super. Ct. App. Div. 2005).  However, this requirement has been broadly defined as embracing more than a monetary loss.  <u>Union Ink Co. v. AT&T Corp.</u>, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002).  In fact, "[a]n ascertainable loss occurs when a consumer receives less than what was promised." <u>Id.</u>; <u>see</u> <u>also</u> <u>Miller v. American Family Publishers</u>, 663 A.2d 643, 655 (N.J. Super. Ct. Ch. Div.1995) ("For their money, they received something less than and different from what they reasonably expected in view of defendant's presentations.  This is all that is required to establish ascertainable loss . . . .").

The New Jersey Supreme Court recently addressed ascertainable loss in the context of chronically defective motor vehicles.  In <u>Thiedemann v. Mercedes Benz USA, LLC</u>, 872 A.2d 783 (N.J. 2005), vehicle owners brought a class action against an auto manufacturer, having alleged a defect in the vehicles' fuel systems.  The supreme court ordered summary judgment in favor of the auto maker because the named plaintiffs failed to produce any evidence that they "suffered a quantifiable or otherwise measurable loss as a result of the alleged CFA unlawful practice."  <u>Id.</u> at 786.

The <u>Thiedemann</u> court rejected the named plaintiffs' theory of loss by diminution in value.  Specifically, the court found that the plaintiffs' theory was too speculative to satisfy the loss requirement because they: 1) made no attempt to sell their vehicle; and 2) presented no expert evidence that the resale market for the specific vehicle was skewed by the defective condition.  <u>Thiedemann</u>, 872 A.2d at 795.  Thus, in order to survive summary judgment, a plaintiff claiming loss in value must offer specific proofs to support or infer a quantifiable loss rather than mere subjective assertions of a lost bargain without anything more.  <u>Id.</u>

Under the circumstances, it is inappropriate to dismiss Plaintiff's Complaint for failure to state a claim at this juncture.  Consistent with <u>Union Ink Co.</u>, the Complaint alleges that Plaintiff and other proposed Class members suffered an ascertainable loss in that they "received something worth less and different from what they reasonably expected to receive."[9]  (Compl., ¶ 50.)  In essence, Plaintiff is claiming ascertainable loss in the form of diminution in value, a theory which the <u>Thiedemann</u> court acknowledged could satisfy the CFA's loss requirement.  Plaintiff could prove facts whereby she was

---

[9]Plaintiff also alleges that she and other class members have suffered an ascertainable loss in that their vehicles have serious engine design defects.  (Compl. ¶ 51.)  The <u>Thiedemann</u> court rejected a similar argument and noted that "[t]he mere fact that an automobile defect arises does not establish, in and of itself, an actual and ascertainable loss to the vehicle purchaser." 872 A.2d at 794.  Rather, the court stated that "[t]he defects that arise and are addressed by warranty . . . do not provide the predicate 'loss' that the CFA expressly requires."  <u>Id.</u>  However, the court did not hypothesize how this rule might change in cases where a plaintiff alleges that the defendant formulated a repair procedure that was known not to be effective at correcting the defect.  This Court need not reach that question because Plaintiff has otherwise alleged sufficient ascertainable loss to survive this motion to dismiss for failure to state a claim.

entitled to relief under this theory.  For example, she could provide the sort of proofs envisioned by the Thiedemann court, including expert evidence directed to her defective vehicle's loss in value or some other similarly quantifiable lost benefit-of-the-bargain.

Moreover, Plaintiff adequately alleges that GM's unlawful conduct caused her loss.  First, Plaintiff claims that she and other putative Class members would not have purchased their vehicles if GM had earlier disclosed the existence of the known defective condition of K Engine vehicles.  (Compl., ¶ 49.)  Additionally, it is implicit that the CSP could serve as a basis for causation.  Assuming that the CSP repair procedure was knowingly inadequate, any potentially inherent diminution in the value of Plaintiff's vehicle would not exist but for this inadequacy.  Put differently, if the CSP repair procedure constituted a sufficient fix, Plaintiff would not lose the benefit of her bargain.  Rather, she would have exactly that which was contemplated by the contract of sale – a vehicle that was properly repaired as needed in accordance with the terms of the express warranty.  For these reasons, the Court disagrees with GM's arguments as to Plaintiff's CFA claim and will deny GM's motion to dismiss.

### D.  Failure to State a Claim on Behalf of the Proposed Class

GM additionally contends that Plaintiff's Complaint fails to state a claim on behalf of the proposed Class.  Thus, it requests that even if this Court refuses to dismiss Plaintiff's individual claims, it dismiss the Class allegations.

Fed. R. Civ. P. 23(c)(1) governs certification of class actions.  Specifically, subsection (c)(1)(A) of the rule provides:

> When a person sues or is sued as a representative of a class, the court must--*at an early practicable time*--determine by order whether to certify the action as a class action.

Fed. R. Civ. P. 23(c)(1)(A) (emphasis added).  Thus, courts permit class action allegations to be stricken prior to discovery, such as on a Rule 12(b)(6) motion.  See Clark v. McDonald's Corp., 213 F.R.D. 198, 205 n.3 (D.N.J. 2003).  However, such a dismissal should be ordered only "in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  Id. (citations omitted).

GM makes three arguments in support of its motion to dismiss the Class allegations under Rule 12(b)(6).  First, it argues that the proposed Class is impermissibly broad in that it would include persons who have no individual claim against GM.  Second, GM asserts that the Complaint cannot state a claim for breach of warranty as to the proposed Class because not all putative class members sought repair of their vehicle under either the CSP or warranty.  Third, it argues that the Complaint does not properly allege the CFA element of causation on behalf of the putative Class.

### 1.  Broadness of Putative Class

Plaintiff's Complaint defines the putative Class in this case as follows:

> All persons in the State of New Jersey who are current owners or lessees of a model year 2000, 2001, and 2003 Buick Park Avenue, Buick Regal, Chevrolet Impala, Chevrolet Monte Carlo, Pontiac Bonneville, Pontiac Grand Prix that contains a 3.8 liter V6 engine.

(Compl., ¶ 12.)  GM contends that this class definition is too broad because not all putative Class members necessarily experienced the alleged defect.  Thus, it argues, the

Class could include persons who have no individual claim against GM.

Each member of a putative class must individually possess a right to make a claim in a matter, even if a given member would refuse to exercise that right.  See Saldana v. City of Camden, 599 A.2d 582, 588 (N.J. Super. Ct. App. Div. 1991) (citation omitted). Thus, a class cannot be so broad as to include members who have no standing to bring suit on their on accord.  Further, this Court has previously stated that an allegation of a *potentially* defective product is not sufficient to state a claim under either a warranty or consumer fraud theory.  See Yost v. General Motors Corp., 651 F. Supp. 656, 657 (D.N.J. 1998).

In this case, however, the Complaint does not allege that all K Engine vehicles might potentially contain a serious design defect.  Rather, it alleges that all K Engine vehicles *do* contain such a defect in that they incorporate a poorly designed plastic manifold-plenum into their design.  (Compl., ¶ 21.)  The mere possibility that not all members of the putative Class experienced a coolant leak to date does not necessarily mean that the underlying defect is not present.  Instead, it simply means that the most visible evidence of the defect is not presently common to all affected vehicles.

### 2.  Class Allegation of Breach of Warranty

GM also contends that the Complaint does not allege that all putative Class members sought repair of the defect under the CSP or the vehicles' express warranty. This is important because the express warranty at issue in this case is one of repair.  In other words, the GM warranty promises that any mechanical problem attributable to

defective materials or workmanship will be fully and properly repaired.  (See Def. Exh. A

at 6.)  Thus, if an individual failed to seek a repair of the allegedly defective manifold-

plenum under the CSP or otherwise, he or she could not maintain a suit for breach of

express warranty.  Cf. Herbtsman v. Eastman Kodak Co., 342 A.2d 181, 187 (N.J. 1975)

(stating that a warranty of repair is not breached by the delivery of a defective product

because such a warranty promises only that if a defect arises, it will be corrected).

Nonetheless, this Court is unwilling to make any assumptions with respect to the number

of owners and lessees of K Engine vehicles who sought repairs versus the number who

did not, particularly as GM filed the instant motion in November 2004 and the CSP was

in effect through July 31, 2005.  The more prudent course of action is to deny GM's

motion and retain the option of revisiting the issue during a Rule 23 motion to certify the

Class.  Presumably, by the time such a Rule 23 motion comes before the Court, further

discovery on the issue would have been conducted.

### 3.  Class Allegation of CFA Causation Element

GM also argues that in order to proceed as a class action, the Complaint must

demonstrate that each member of the proposed Class individually relied on GM's

allegedly fraudulent conduct and omissions.  However, this argument ignores caselaw

which permits "[t]he presumption or inference of reliance and causation, where omissions

of material fact are common to the class, . . . in the context of both common law and

statutory fraud."  Varacallo v. Massachusetts Mut. Life Ins. Co., 752 A.2d 807, 817 (N.J.

Super. Ct. App. Div. 2000); see also Cope v. Metro. Life Ins. Co., 696 N.E.2d 1001, 1008

(Ohio 1998). ("It is not necessary to establish inducement and reliance upon material omissions by direct evidence.  When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance."); Vasquez v. Superior Court of San Joaquin County, 484 P.2d 964, 973 (Cal. 1971) (holding that "an inference of reliance would arise as to the entire class . . . if the trial court finds material misrepresentations were made to the class members").  Thus, if Plaintiff can establish for the factfinder that GM engaged in unlawful conduct under the CFA, she would be entitled to a presumption of causation as to the proposed Class.  For these reasons, GM's motion to dismiss the Class allegations is denied.

### III.  Conclusion

For the foregoing reasons,

IT IS ORDERED on this 16th day of August, 2005 that the motion to dismiss filed by General Motors Corporation is hereby DENIED.

/S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.